1

1           IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF ARKANSAS
2                   WESTERN DIVISION

3    NATIONAL TRUCKING FINANCIAL RECLAMATION
     SERVICES, LLC, BRUCE TAYLOR, EDIS TRUCKING,
4    INC., JERRY FLOYD, MIKE CAMPBELL,
     PAUL OTTO, TOWNES TRUCKING, INC.
5    and R&R TRANSPORTATION, INC.,              No. 4:13CV00250 JMM
     individually, and on behalf of            July 16, 2013
6    all others similarly situated,            Little Rock, Arkansas
                                                8:17 a.m.
7           Plaintiffs,

8       v.

9    PILOT CORPORATION, PILOT TRAVEL CENTERS,
     LLC, d/b/a PILOT FLYING J, FJ MANAGEMENT, INC.,
10   CVC CAPITAL PARTNERS, JAMES A. "JIMMY" HASLAM,
     III, MARK HAZELWOOD, MITCH STEENROD,
11   SCOTT WOMBOLD, JOHN FREEMAN,
     VINCENT GRECO and BRIAN MOSHER,
12
            Defendants.
13

14                   **TRANSCRIPT OF HEARING**
              BEFORE THE HONORABLE JAMES M. MOODY,
15               UNITED STATES DISTRICT JUDGE

16   APPEARANCES:

17   On Behalf of the Plaintiffs:

18       MR. MICHAEL L. ROBERTS, Attorney at Law
           Roberts Law Firm, P.A.
19         Post Office Box 241790
           Little Rock, Arkansas  72223-1790
20
         MR. DON BARRETT, Attorney at Law
21         Barrett Law Group, P.A.
           404 Court Square North
22         Lexington, Mississippi  39095-0927

23       MR. THOMAS P. THRASH, Attorney at Law
           Thrash Law Firm, P.A.
24         1101 Garland Street
           Little Rock, Arkansas  72201
25                                          [CONTINUED]



                 Judith A. Ammons, RPR, CRR, CCR
                 United States Court Reporter

1    On Behalf of the Defendants:

2        MR. AUBREY B. HARWELL, JR., Attorney at Law
         MR. RONALD G. HARRIS, Attorney at Law
3            Neal & Harwell
             One Nashville Place
4            150 Fourth Avenue North, Suite 2000
             Nashville, Tennessee  37219-2498
5
         MR. JAMES E. HOOPER, JR., Attorney at Law
6            Wheeler Trigg O'Donnell LLC
             370 Seventeenth Street, Suite 4500
7            Denver, Colorado  80202

8        MR. GORDON BALL, Attorney at Law
             7001 Old Kent Drive
9            Knoxville, Tennessee  37919

10

11

12

13

14

15

16

17

18

19

20        Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
21   transcription.

22

23

24

25


                         Judith A. Ammons, RPR, CRR, CCR
                         United States Court Reporter

1              P R O C E E D I N G S

2        (Proceedings commencing in open court at 8:17 a.m.)

3              THE COURT:  Good morning.  This is the case of

4   National Trucking Financial and others against Pilot

5   Corporation and others.  It's Case No. 4:13CV250.  And the

6   hearing this morning is to consider a preliminary approval of a

7   class settlement.  And I have reviewed what I deem to be joint

8   motions for me to approve the settlement and also a proposed

9   order.  So I have read those and I think I understand the

10  issues here, but how do you want to proceed?

11             MR. ROBERTS:  Your Honor, may it please the Court.  If

12  you'd allow us to give a five- to ten-minute description of the

13  settlement and answer any questions the Court might have, we

14  can proceed that way.

15             THE COURT:  That would be fine.

16             MR. ROBERTS:  Your Honor, if it please the Court, I'd

17  like to make a short introduction and then turn it over to my

18  partner, Tom Thrash.

19             THE COURT:  All right.

20             MR. ROBERTS:  Your Honor, may it please the Court.

21  I'm Mike Roberts.  I represent the plaintiffs in this case.

22  The parties come before you today having filed a joint motion

23  for preliminary approval of the settlement, the proposed

24  settlement, of the nationwide class action settlement.  We

25  request Your Honor approve and grant this proposed settlement

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter

1   today.

2         And this morning we filed a few papers.  We filed a

3   consolidated amended complaint.  We filed a joint motion, as

4   you've read, the joint motion for preliminary approval.  We

5   filed supporting papers, the memoranda in support of that

6   motion.

7         A little background about the case, Your Honor.  I know

8   that you've read the papers.  We filed our complaint in federal

9   district court in April, April 24th of this year.  We were the

10  first complaint on file in federal district court across the

11  United States.  And we have entered into this proposed

12  settlement through arm's-length negotiations.  We started in

13  April, and we've been working week by week ever since.

14        We -- the complaint that we filed this morning added

15  certain parties to make sure that there was a comprehensive

16  coverage for the settlement as well as added counts or theories

17  of recovery for that same purpose.

18        And so I want to make sure that I introduce my cocounsel,

19  Tom Thrash from Little Rock, as well as Don Barrett from

20  Mississippi.  The defense is represented by their team over on

21  the other table.

22        We present this motion and feel like this settlement is

23  fair, reasonable, and adequate.

24        I'm going to turn it over to Mr. Thrash at this point.

25              THE COURT:  Okay.  Thank you, Mr. Roberts.


                    Judith A. Ammons, RPR, CRR, CCR
                     United States Court Reporter

1           MR. THRASH:  Good morning, Judge.

2           THE COURT:  How are you?

3           MR. THRASH:  Just fine.  Thank you, Judge.  We really

4  appreciate you taking the time to hear this motion for

5  preliminary approval of the class settlement in this case this

6  morning.  And I would like to just briefly summarize the case

7  and summarize the settlement.

8           You know, this is a nationwide class action involving

9  Pilot Flying J, the truck centers which are located all across

10 the country.  Pilot is the largest operator of diesel fuel

11 retail centers in the country.  And the case involves class

12 members who are trucking companies who have entered into rebate

13 programs and discount programs for discounts off their fuel

14 purchases with Pilot.

15          And these programs are -- and the case involves these

16 trucking companies who did not receive their proper amount of

17 their rebates or discounts from their fuel purchases.

18          The programs that the class members entered into, there

19 was basically two.  There was a discount program which is a

20 cost-plus program.  It's Pilot's cost of the fuel plus certain

21 cents per gallon, three cents, five cents, whatever is

22 negotiated.  In that situation, Pilot would send the customer

23 an invoice at the end of the month showing what the cost was

24 and the discount.

25          And then you have the rebate program, which is the retail

1    price, the retail price less a certain percentage per gallon.

2    And in that situation, it could be three cents, four cents,

3    whatever is negotiated.  At the end of the month, Pilot would

4    send them a check.

5         And the class members did not always receive the proper

6    amount of their rebates or discounts from these programs.  And

7    that's what this class action seeks to recover:  All of the

8    unpaid rebates and discounts that are owed to the class

9    members.

10         And as Mr. Roberts said, the case was filed on

11   April 21st -- April 24th.  We were the first federally filed

12   case.  We have been in negotiations and informal discovery ever

13   since, up until this last weekend when a settlement was reached

14   in principle.  It was documented and signed yesterday.

15             THE COURT:  And there are other cases pending in other

16   jurisdictions?

17             MR. THRASH:  Yes, sir, there are.  There are seven

18   other class members who have filed lawsuits in other

19   jurisdictions who have joined this case this morning in the

20   consolidated complaint and also in the settlement.  They are

21   part of the settlement.  There are some other cases that have

22   been filed that are not part of this -- the consolidated

23   amended complaint or the settlement.

24         And what we're seeking, we're seeking approval of the

25   settlement of that class this morning so that we can send

1    notice out to all of the class members immediately and set a

2    specific date for the final fairness hearing.

3            THE COURT:  And how will that affect then these other

4    cases?  I mean, I know the ones that have been consolidated

5    will be taken care of by this settlement, but --

6            MR. THRASH:  Yes, sir.  Well, the other cases, those

7    class members are taken care of in this settlement.  And it's

8    an incredible settlement.  It's -- we've never seen a

9    settlement like this in a class action.  The class will receive

10   100 percent of all underpayments of rebates and discount

11   programs.  They are going to be paid 6 percent interest, which

12   is unheard of.  They are going to be paid 6 percent interest

13   from the time the payments were -- should have been made until

14   they are made.

15           The defendants are going to be permanently enjoined from

16   ever engaging in this conduct again.  The class representatives

17   are going to be paid $10,000 for an incentive award.  The

18   defendants will also pay all of the administrative costs.  They

19   are going to pay the costs of notice.  They are going to pay

20   the costs of their internal auditors.  They are going to pay

21   the costs of an independent auditor to audit their internal

22   auditors.

23           THE COURT:  And what concessions are the plaintiffs

24   making for punitive damages?

25           MR. THRASH:  There was a claim for punitive damages.

1    And we feel like the payment of these immediately with

2    6 percent interest, you know, really takes care of that.  And

3    what all they are doing in payment of -- payment of all of the

4    administrative costs, the injunction, when you add all of that

5    together, Judge, the settlement could be somewhere between 75

6    and $100 million in value.

7         And they are going to pay for the class administrator

8    which is Total Class Solutions.  That's an independent third

9    party, well-known in the industry for administration of class

10   actions.  The administrator is going to -- there will be --

11   they will administrate the notice plan, the opt-outs, the

12   payment of claims.

13        In addition to paying Total Class Solutions, the

14   defendants are going to pay their own internal auditors to

15   calculate and go over every account and calculate the amount

16   that's owed to each customer.

17        And then they are going to pay for an independent auditor

18   to audit their internal audit.  And that independent auditor is

19   Horne, LLC, a major accounting firm located in five states.

20   They're located in Alabama, Tennessee, Mississippi, Louisiana,

21   Texas.  They have over 500 accountants and staff members.  This

22   is a major firm that's going to come in and provide the

23   independent audit.

24        And then, of course, the defendants will pay class counsel

25   for their legal fees.

1       None of this is paid for -- none of this is an expense to

2   the class members.  All of these costs, you know, are at no

3   expense to the class members.  They get 100 percent of what

4   they're owed plus 6 percent interest.  And all payments to the

5   class members will basically begin immediately.

6       The audit -- the auditing -- internal auditing is in

7   process right now.  And as soon as they determine the amount

8   owed, they pay those class members.

9       And, of course, this is not a claims-made settlement.

10  Class members do nothing to get their settlement check; all at

11  no cost to the class members.

12      The notice that we're sending out and the notice of what

13  we're proposing is the very best notice possible.  It's mailed

14  notice to all class members.  And the mail notice will begin --

15  or will be sent within 15 days of the entry of the preliminary

16  approval order.  And that should be completed by July 31st if

17  the Court were to enter the order today.

18      A press release of the settlement will go out in five days

19  from now, and that should result in publication of the

20  settlement, the settlement terms, in all of the major

21  newspapers across the country.

22          THE COURT:  And at this final hearing, do the

23  claimants have a right to opt out of the settlement?

24          MR. THRASH:  Oh, yes, sir.  And I will get to that.

25  The opt-out is a 90-day opt-out from the time -- from the entry

1    of the preliminary approval order.  It will -- they will have

2    75 days to exercise that opt-out from the time the notice

3    requirement -- the end of the term for the notice to be

4    completed.  So they will get 75 days of notice to opt out,

5    which is two and a half times more than the constitutionally

6    required notice of 30 days to opt out.  And so we feel like

7    it's a very good -- a very good timeline for that.

8         There will also be a website on the notice.  The website

9    will have the administrator and all class counsel and the

10   company, which will have the settlement notice on the website.

11   That will also be in Spanish.  The class notice has been

12   drafted by Hilsoft Notifications, one of the premiere class

13   notice companies in the country.  At the final fairness

14   hearing, they will come in and provide evidence to the Court

15   that the notice was the best possible and complied with all

16   constitutional requirements of due process.

17        We just feel like we got a great notice and we got a great

18   settlement.  The settlement agreement and the preliminary

19   approval order sets out the timelines for all the major events

20   like the mail notice completed by 15 days from the entry of the

21   order.  That will be July 31st.  The press -- if the Court

22   issues the order today.  The press release will be issued

23   within five days.

24        CAFA notice, which as the Court knows is required to

25   provide to the state attorney generals for each state and the

1    U.S. Attorney General, will go out within 10 days of the entry

2    of the preliminary approval order.

3         And again, like I said, the opt-outs, the objections, they

4    have 90 days, or 75 days from the end of the notice

5    requirement.

6         Class members can challenge the settlement amount that the

7    auditors come up with and get assistance from the independent

8    auditor to review their individual accounts if they are not

9    satisfied with it.  And they can do that within 30 days after

10   they receive their settlement payment, or January 15th,

11   whichever is later.

12        And so, Judge, we feel like this is just -- it's an

13   extraordinary settlement:  100 percent, 6 percent interest.

14   And we submit that this settlement falls within the range of

15   possible approval, which is a standard for preliminary approval

16   of class settlements.

17        And we would ask the Court to preliminarily approve the

18   settlement, direct us to send notice out to all class members

19   by direct mail, and also the press release and what's provided,

20   and set a date for the final fairness hearing sometime after

21   November 16th.

22        And so I hope I've accurately described what's in our

23   papers and the terms of the settlement.  It's just -- it's just

24   an incredible settlement and --

25             THE COURT:  It sounds like it.


                    Judith A. Ammons, RPR, CRR, CCR
                      United States Court Reporter

1        Your wife is my granddaughter's third grade teacher.

2   She's not going to retire if I approve this settlement, is she?

3            MR. THRASH:  No, sir.  I'll make sure she stays there.

4   Yes, sir.

5            THE COURT:  Okay.

6            MR. THRASH:  Thank you, Judge.  Do you have any

7   questions about anything?

8            THE COURT:  No.  The punitive damages was the only

9   question I really had.  I didn't know what concession the

10  plaintiffs made, but I assumed that you are giving up the

11  punitive damages claim.

12           MR. THRASH:  Yes, sir, we are, for 6 percent

13  interest --

14           THE COURT:  I understand.

15           MR. THRASH:  -- which is unbelievable.  Yes, sir.

16  Thank you, Judge.

17           THE COURT:  Punitive damages are hard.

18      Mr. Barrett, they gave you some role in the negotiation of

19  this settlement.  Do you want to be heard on this at all or --

20           MR. BARRETT:  Only to this extent, Your Honor.  May I

21  speak from here?

22           THE COURT:  Yes, as long as you speak up so we can

23  hear.

24           MR. BARRETT:  Yes, sir.  I've been around a long time.

25  I've been practicing law for 44 years.  This is the best --

1    I've been doing class actions essentially for 30 years around

2    the country.  This is the best settlement I've ever been able

3    to negotiate.  It's really an astonishing settlement.

4         And I would like to say on the record that, you know, I

5    called Mr. Harwell the day after we filed our lawsuit.  And I

6    said that, "If Pilot wants to do the right thing, they need to

7    talk to us."  He said, "We'll think about it."

8         About two hours later, he called me back and said he had

9    talked to Mr. Haslam and Mr. Haslam said he did indeed want to

10   do the right thing.  And we've been engaged in tough, hard

11   negotiations ever since, but I will have to say they did the

12   right thing.

13              THE COURT:  All right.  Thank you, Mr. Barrett.

14              MR. HARRIS:  Your Honor, if I may approach.

15              THE COURT:  Yes, sir.

16              MR. HARRIS:  My name is Ron Harris.  I'm of the

17   Nashville, Tennessee, law firm of Neal & Harwell.  And I would

18   like to make the introductions and then turn it over to Mr.

19   Hooper who has been involved in the negotiation and drafting of

20   the documents.

21        Here on the defense side is Mr. Gordon Ball, who

22   represents the individual defendant, Mark Hazelwood; my

23   partner, Aubrey Harwell, from Nashville, Tennessee, for Pilot;

24   and Mr. James Hooper from the Denver, Colorado, firm of Wheeler

25   Trigg and O'Donnell.

1    We filed a motion pro hac vice.  I was the signature

2  attorney on that because I've been admitted to practice in

3  Arkansas since 1977 and a member of this court.  And we filed

4  for a number of individual attorneys that will be representing

5  the defendants.  So we have got that motion before Your Honor.

6         THE COURT:  Okay.  I'll accept them.  They are all

7  welcome.

8         MR. HOOPER:  Jim Hooper for Pilot as well.

9         THE COURT:  Mr. Hooper.

10         MR. HOOPER:  Your Honor, we don't -- we agree with the

11  way Mr. Thrash summarized things for you.  We're happy to

12  answer any questions you might have of us.

13         THE COURT:  You're happy with the settlement?

14         MR. HOOPER:  Yes, sir.

15         THE COURT:  Yes.  Okay.  That pretty well covers it.

16         MR. HARWELL:  May I be heard, Your Honor?

17         THE COURT:  Yes, Mr. Harwell.

18         MR. HARWELL:  Since I'm the oldest person in the

19  courtroom, I'm going to call attention from my colleagues.

20    Your Honor, I know this is unusual.  The events that

21  triggered this occurred on April 15.  Mr. Barrett is absolutely

22  right.  He and I are friends.  He called me shortly thereafter,

23  and we have intentionally negotiated this.

24    I'm a little concerned I'm here to ask for approval when

25  he says it's the best deal he ever got.  I'm not sure when I

1    get back home I'll still be counsel of record if my client

2    hears about that.

3            But I do want to say one more thing, Your Honor.  One of

4    the things this Court is well-known for is civility as a

5    practicing lawyer and as a judge.

6            I want to compliment Mr. Barrett and his cocounsel for

7    what they've done because this has been done without rancor,

8    without animus.  We have not agreed on a lot of issues, but

9    we've come to a consensus.  I represent to the Court this is

10   fair.  I don't represent that it's the worst I've ever paid

11   though.  He said it's the best he's ever received, so I'm a

12   little bit nervous about that, Your Honor.

13           We would be grateful if you would approve this, Judge.

14           THE COURT:  Thank you, Mr. Harwell.

15           Okay.  Well, I do think that the settlement is not only

16   fair, reasonable, but also adequate.  I know the plaintiffs

17   have a strong case just based on what I assume to be accurate

18   pleadings.  And these class actions always involve issues that

19   favor the defense.  So I'm sure that it was negotiated in

20   recognition of the strengths and weaknesses on both sides of

21   the case.  But I find that the settlement is reasonable.

22           As has been pointed out here, the plaintiffs have been

23   fully compensated, not only for all of their past damages, but

24   with an injunction for any future potential damages and a net

25   recovery with the costs and attorneys' fees to be paid by the

1    defendants.

2        And I think there is adequate protection to the plaintiffs

3    by way of these audits and certain options that they have.  And

4    I've looked at the notice, and I do find that it's in proper

5    form and adequate to protect everyone.  And I think the

6    settlement is fair because I agree, this was an arm's-length

7    negotiation by very competent and experienced lawyers on both

8    sides.  Your reputation precedes all of you.  And so I know

9    that you aggressively represented your client here.  And no

10   matter who got the best deal, there are no bad settlements as

11   far as I'm concerned.

12       So when I look at the totality of all of this, I have no

13   hesitation in approving the settlement.  And I looked at the

14   proposed order and it seems to cover everything that needs to

15   be covered, so I'll enter that today.

16       We'll set a fairness hearing and tentatively set that for

17   November the 25th of 2013.  And if that date is not feasible

18   for you, we can work out a date after that.  But that's really

19   the first available time that I have that doesn't conflict with

20   trial, so I'll be able to give you a sufficient amount of

21   hearing time if we need it.  So we'll tentatively set that for

22   November the 25th at 9:15 and it will be here in this

23   courtroom.

24       Anybody else need to add anything, or do I need to add

25   anything before we wrap it up?

1              MR. THRASH:  No, Your Honor.

2              THE COURT:  All right.  Nice to meet all of you.

3        (Proceedings concluded at 8:37 a.m.)

4                    C E R T I F I C A T E

5        I, Judith A. Ammons, Official Court Reporter, do hereby

6   certify that the foregoing is a true and correct transcript of

7   proceedings in the above-entitled case.

8

9

10

11   /s/   Judith A. Ammons, RPR, CRR, CCR    Date: July 18, 2013
            United States Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25


                    Judith A. Ammons, RPR, CRR, CCR
                      United States Court Reporter