**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 31 2013

JAMES W. McCORMACK, CLERK
By: _____
                                    DEP CLERK

| | | |
|---|---|---|
| NATIONAL TRUCKING FINANCIAL | ) | |
| RECLAMATION SERVICES, LLC, | ) | |
| BRUCE TAYLOR, EDIS TRUCKING, | ) | |
| INC., JERRY FLOYD, MIKE CAMPBELL, | ) | |
| PAUL OTTO, TOWNES TRUCKING, INC. | ) | |
| and R&R TRANSPORTATION, INC., | ) | |
| individually, and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. **4:13-cv-00250-JMM** |
| | ) | |
| PILOT CORPORATION, PILOT TRAVEL | ) | |
| CENTERS, LLC d/b/a PILOT FLYING J, FJ | ) | |
| MANAGEMENT, INC., CVC CAPITAL | ) | |
| PARTNERS, JAMES A. "JIMMY" | ) | |
| HASLAM, III, MARK HAZELWOOD, | ) | |
| MITCH STEENROD, SCOTT WOMBOLD, | ) | |
| JOHN FREEMAN, VINCENT GRECO and | ) | |
| BRIAN MOSHER, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MOTION TO ALLOW LATE REQUEST FOR EXCLUSION OR,
ALTERNATIVELY, TO ALLOW LATE OBJECTION AND REQUEST TO
APPEAR AT THE FAIRNESS HEARING AND MEMORANDUM OF LAW IN
SUPPORT THEREOF**

Moore Freight Service, Inc. ("Moore Freight"), a potential member of the putative

class affected by the proposed settlement in this proceeding, respectfully moves for an

extension of the time to request exclusion from the Settlement Class, or, alternatively to

allow its late objection and request to appear at the Fairness Hearing. In support thereof, Moore Freight respectfully shows the following:

## I.    FACTUAL BACKGROUND

Moore Freight is a Tennessee corporation, with multiple facilities throughout Tennessee and the United States, and operations domestically and in Canada. Moore Freight is a comprehensive freight service company specializing in flat glass transportation. On or about September 28, 2012, Moore Freight filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), and remains as debtor in possession in the pending chapter 11 case (the "Bankruptcy Case"). (Declaration of B. Holmes, Esq., attached hereto as Exhibit *"A"* at ¶ 3).

In the operation of its business, Moore Freight purchases substantial quantities of diesel motor fuel, including from Pilot Travel Centers, LLC ("Pilot"). Moore Freight also participated in Pilot's rebate program, beginning no later than November of 2007. (Holmes Decl. at ¶ 4). Moore Freight could therefore qualify as a member of the class affected by the proposed settlement in this proceeding.

Pilot, through its in-house and outside counsel, has actively participated in Moore Freight's chapter 11 case, including filing a motion seeking allowance of an administrative claim of $198,124.18 under 11 U.S.C. § 503(b)(9) in October of 2012, for fuel purchases made by Moore Freight in the days leading up to bankruptcy. (Id. at ¶ 5). Because Moore Freight had no knowledge at the time of any wrongfully withheld rebates,

Moore Freight did not oppose the motion, and paid Pilot the full amount requested. After the Bankruptcy Petition Date, Moore Freight also placed with Pilot a deposit of $30,000, which is believed to be still held by Pilot. (Id.)

After learning of the federal investigation of Pilot in April of 2013, Moore Freight, through its bankruptcy counsel, contacted Pilot's counsel to request an audit of Moore Freight's account with supporting information. This request to Pilot for detailed accounting remained pending through May and June of 2013. (Id. at ¶7). After not receiving the requested information for several months, Moore Freight's bankruptcy counsel filed a motion in early July 2013, pursuant to Federal Rule of Bankruptcy Procedure 2004, for examination of certain current and former employees of Pilot and the production of certain documentation relating to the calculation of withheld rebates owed to Moore Freight. (Id. at ¶ 8). Shortly thereafter, the Bankruptcy Court issued orders directing the examinations and document production.   (Id.) On July 22, 2013, in response to the orders issued by the Bankruptcy Court, Pilot, through its counsel, produced preliminary information and an unconditional payment to Moore Freight of the amount Pilot unilaterally calculated as owed to Moore Freight for wrongfully withheld rebates. (Id.).

At the request of Moore Freight's bankruptcy counsel, this preliminary information was supplemented on August 9, 2013 with supporting data for Pilot's calculations of rebate amounts owed to Moore Freight. (Id. at ¶ 9). This supplemental information,

according to Pilot, included all store-by-store and card account transactions information from November 2007 through July 23, 2013, and from which, also according to Pilot, a sufficient determination could be made of the total volume purchased by Moore Freight, the discount applied to the gallons purchased, and the application of the discount to each of the direct billing invoices.  (Id.)

Since August 9, Moore Freight has been in the process of internally (or through retained financial professionals) reviewing the thousands of transactions detailed in the information provided by Pilot, and comparing that information to Moore Freight's records in order to evaluate whether Pilot properly calculated the amount of withheld rebates.[1] Because of the volume of information and the work required to verify the information, that process is on-going.  (Id. at ¶ 10).

During the same time as it has been reviewing the Pilot information, Moore Freight and its professionals have also spent considerable time pursuing confirmation of a chapter 11 plan of reorganization. On July 24, 2013, Moore Freight filed its plan of reorganization and accompanying disclosure statement.  (Id. at ¶ 12).  Because Moore Freight leases and finances the tractors, trailers and other equipment used in the operation of its business from more than thirty different entities and because of its large tax debt, the disclosure statement and proposed plan of reorganization are very complex.  More

---

[1] More than 200 drivers transport freight for Moore Services, either as company drivers or as independent contractors. On average, Moore Freight purchases in excess of $800,000 in fuel each month.

than half of Moore Freight's creditors objected to the disclosure statement and have also indicated that they will oppose approval of Moore Freights' plan of reorganization unless modifications are made. Since the beginning of September, Moore Freight's bankruptcy counsel have been in constant negotiations with these creditors of Moore Freight regarding the scope of information included in the disclosure statement and treatment of various creditors' claims under Moore Freight's plan of reorganization because the confirmation hearing was scheduled for October 29, 2013.

Negotiations with creditors regarding chapter 11 plan treatment is a protracted and complex process. Every proposed change to a creditor's plan treatment requires extensive analysis of operational projections, and potential implications for plan confirmation. Negotiation of Moore Freight's chapter 11 plan is particularly more complicated because of the number of creditors with potentially competing interests and the company's debt structure. (Id. at ¶ 13).

Despite being a potential member of the affected class, Moore Freight did not receive notice of the settlement in this action. Nor was Moore Freight's bankruptcy counsel provided the notice detailing the settlement and the deadlines contained therein. (Id. at ¶ 11). Neither Pilot nor Plaintiffs herein sought or obtained relief from the automatic stay in the Moore Freight Bankruptcy Case in order to impose the proposed class action settlement on Moore Freight. (Id. at ¶ 14). Such relief would be required since Moore Freight's claims against Pilot are property of the bankruptcy estate pursuant

to 11 U.S.C. § 541. (Id. at ¶ 14). Furthermore, because Moore Freight is in bankruptcy, any settlement of its claims against Pilot is subject to approval by the Bankruptcy Court. Reynolds v. Comm'r of Internal Revenue, 861 F.2d 469, 473 (6th Cir. 1988)(citation omitted) ("In bankruptcy proceedings, as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable.").[2]  To even participate in the settlement with Pilot, approval from the Bankruptcy Court would have been required, which under applicable Federal Rules of Bankruptcy Procedure and local bankruptcy rules, is a minimum of a 28-day process. Any action by Pilot or Plaintiffs herein to impose a deadline upon Moore Freight to fully evaluate its claims and negotiate a settlement with Pilot or lose its right to do so was an act to exercise control over the property of the bankruptcy estate that is stayed by 11 U.S.C. § 362(a)(3).  Pilot's attempt to force a settlement of Moore Freight's claims without approval from the Bankruptcy Court was therefore possibly a violation of the bankruptcy stay.

Moore Freight learned of the deadline within which it could exclude itself from the Settlement Class, and the procedure for doing so, on or about October 22, 2013, after reading a local newspaper article. (Id. at ¶ 15). Despite not having yet fully completed its review and analysis of the information provided by Pilot and its on-going good faith

---

[2] Because Moore Freight's chapter 11 case is pending in the U.S. Bankruptcy Court for the Middle District of Tennessee, Sixth Circuit law applies. See also American Prairie Construction v. Hoich, 594 F.3d 1015, 1024 (8th Cir. 2010)(citation omitted)("It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective.")

efforts to negotiate a settlement directly with Pilot, when Moore Freight became aware

that the deadline for seeking exclusion of the Settlement Class had expired, it sent a letter

on October 25, 2013, seeking an exclusion, and filed the instant Motion.  (10/25/2013

Letter, attached hereto as Exhibit *"B"*; Express Mail Receipt, attached hereto as Exhibit

*"C"*).


II.       **ARGUMENT AND CITATION OF AUTHORITY**

Moore Freight respectfully submits that the totality of the circumstances warrants

an extension of the time for it to seek exclusion from the Settlement Class pursuant to

Fed. R. Civ. P. 6(b)(1)(B), or, alternatively, for allowance of its request for exclusion

pursuant to Fed. R. Civ. P. 60(b)(1).

As noted by this Court,

> [t]he Eighth Circuit has described excusable neglect as "an elastic
> concept that empowers courts to provide relief where a party's
> failure to meet a deadline is caused by inadvertence, mistake, or
> carelessness, as well as by intervening circumstances beyond the
> party's control." Kurka v. Iowa Cnty., 628 F.3d 953, 959 (8th Cir.
> 2010)(internal quotation marks omitted)(quoting Chorosevic v.
> MetLife Choices, 600 F.3d 934, 946 (8th Cir. 2010)(reviewing
> excusable neglect under Fed. R. Civ. P. 6)).  "The determination of
> whether neglect is excusable is at bottom an equitable one, taking
> into account of all relevant circumstances surrounding the party's
> omission." Id.

Cook v. Triple Transport, Inc., 928 F. Supp.2d 1061, 103-64 (E.D. Ark. 2013).

Other courts have further defined the meaning and scope of excusable neglect necessary to warrant a late request for exclusion. "On a motion for late opt out, a district court must determine whether the movant's neglect was excusable, and whether either party would be substantially prejudiced by the court's action." In re Adelphia Commc'ns Corp. Sec. & Derivative. Litig., 271 F. App'x 41, 43 (2d Cir. 2008). "[A] principle that applies more expansively than the specific test for excusable neglect is that 'in class actions, courts have equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants.'" Dasilva v. Esmor Corr. Servs., 167 Fed. Appx. 303, 307 (D.N.J. 2006), quoting De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 313 (3d Cir. 2003). "The court's equitable powers may be necessary to deal with other problems that commonly arise during administration of settlement but might not be covered by the terms of the agreement." Manual for Complex Litigation (Fourth) § 21.7 (2004).

In the present matter, circumstances outside of Moore Freight's control have hindered its ability to comply with the opt out deadline. As a consequence of Moore Freight's bankruptcy, Bankruptcy Court approval of any settlement of Moore Freight's claims against Pilot is required. The stay imposed by 11 U.S.C. § 362(a)(3) would prevent Pilot or Plaintiffs herein from forcing any settlement upon Moore Freight otherwise. Neither Pilot nor Plaintiffs herein ever moved the Bankruptcy Court for relief from the stay or otherwise for approval of any settlement. Additionally, through its dealings with Pilot's outside counsel, Moore Freight's bankruptcy counsel reasonably

believed that good faith negotiations concerning the total amount Pilot owed to Moore Freight would occur in the context of Moore Freight's bankruptcy case and that notice of the opt-out deadline would be provided.

Furthermore, Moore Freight respectfully submits that the facts recited above and in the accompanying affidavit sufficiently demonstrate excusable neglect and the absence of any prejudice to Pilot or Plaintiffs herein. The delay was less than two weeks, Moore Freight has provided a reasonable explanation for the delay, and Moore Freight has acted in good faith. Moore Freight and its bankruptcy counsel have been understandably focused on to confirm a workable plan of reorganization so that Moore Freight can emerge from bankruptcy, and the notice of the Settlement Agreement setting forth the opt-out deadline was not served on Moore Freight's counsel. Upon discovering the existence of the deadline to opt out of the proposed settlement, Moore Freight immediately sent notice of its request to be excluded. Further, there is no prejudice to Pilot or to the Settlement Class because the Fairness Hearing on the proposed settlement is not until November 25, 2013 and Moore Freight's requested exclusion does not hamper or impede that hearing or the process for determination of amounts owed to the Settlement Class contemplated by the proposed settlement.

WHEREFORE, Moore Freight respectfully requests that the Court deem Moore Freight's exclusion from the Settlement Class mailed on October 25, 2013 to be valid, or, alternatively, allow Moore Freight a short extension of time within which to file an

objection to the proposed settlement and a request to be heard at the Fairness Hearing.

This 30th day of October, 2013.

TATE LAW GROUP, LLC

MARK A. TATE
Georgia Bar No.:  698820
2 East Bryan Street, Suite 600
Savannah, Georgia 31401
(912) 234-3030

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

NATIONAL TRUCKING FINANCIAL          )
RECLAMATION SERVICES, LLC,           )
BRUCE TAYLOR, EDIS TRUCKING,         )
INC., JERRY FLOYD, MIKE CAMPBELL,    )
PAUL OTTO, TOWNES TRUCKING, INC.     )
and R&R TRANSPORTATION, INC.,        )
individually, and on behalf of all others )
similarly situated,                  )
                                     )
      Plaintiffs,                )
                                     )
vs.                                  )          Case No. **4:13-cv-00250-JMM**
                                     )
PILOT CORPORATION, PILOT TRAVEL      )
CENTERS, LLC d/b/a PILOT FLYING J, FJ )
MANAGEMENT, INC., CVC CAPITAL        )
PARTNERS, JAMES A. "JIMMY"           )
HASLAM, III, MARK HAZELWOOD,         )
MITCH STEENROD, SCOTT WOMBOLD,       )
JOHN FREEMAN, VINCENT GRECO and      )
BRIAN MOSHER,                        )
                                     )
      Defendants.                )

---

**DECLARATION OF BARBARA D. HOLMES, ESQ.**

---

I, Barbara D. Holmes, hereby declare, under penalty of perjury, as follows:

1.     I am an attorney admitted to practice law in the State of Tennessee. I am a

partner and shareholder in the law firm of Harwell Howard Hyne Gabbert & Manner,

P.C. ("H3GM"). H3GM is bankruptcy counsel for Moore Freight in its capacity as a


EXHIBIT
A

debtor in possession in a chapter 11 case pending in the U.S. Bankruptcy Court for the Middle District of Tennessee under Case No. 3:12-08921-KL3-11.

2.     I am, and was at all times relevant hereto, more than eighteen (18) years of age. I am authorized to make this declaration on behalf of Moore Freight Services, Inc. ("Moore Freight"), H3GM, and myself.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

3.     Moore Freight is a Tennessee corporation, with multiple facilities throughout Tennessee and the United States, and operations domestically and in Canada. Moore Freight is a comprehensive freight service company specializing in flat glass transportation.  On or about September 28, 2012 (the "Bankruptcy Petition Date"), Moore Freight filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), and remains as debtor in possession in the pending chapter 11 case (the "Bankruptcy Case").

4.     In the operation of its business, Moore Freight purchases substantial quantities of diesel motor fuel, including from Pilot Travel Centers, LLC ("Pilot"). Moore Freight also participated in Pilot's rebate program, beginning, to the best of my information, no later than November of 2007.

5.     Pilot, through its in-house and outside counsel, has actively participated in the Moore Freight Bankruptcy Case. In October of 2012, shortly after the Moore Freight's chapter 11 filing, Pilot filed a motion in Moore Freight's bankruptcy case seeking payment for fuel purchases by Moore Freight in the days leading up to the

2

Bankruptcy Petition Date.  Because Moore Freight had no knowledge at the time of any wrongfully withheld rebates, Moore Freight did not oppose the motion, and paid Pilot the full amount requested of $198,124.18.    After the Bankruptcy Petition Date, Moore Freight also placed with Pilot a deposit of $30,000, which, to the best of my knowledge, is still being held by Pilot.

6.    In April of 2013, Moore Freight and H3GM became aware through public news reports that Pilot was the subject of a federal investigation for allegedly wrongfully withholding rebates from certain customers.  Shortly after that, I contacted the attorneys for Pilot to discuss an audit of Moore Freight's account.

7.    In May and June of 2013, I requested again from Pilot's attorneys a detailed accounting of the rebates owed to Moore Freight and the rebates actually paid.   In response to my requests, I was advised that Pilot was in the process of compiling and reviewing information regarding transactions with Moore Freight.

8.    In early July of 2013, I filed a motion on behalf of Moore Freight pursuant to Federal Rule Bankruptcy Procedure 2004 for examination of certain current and former employees of Pilot and the production of certain documentation relating to the calculation of withheld rebates owed to Moore Freight.   The Bankruptcy Court issued orders directing the examinations and document production,.   On July 22, 2013, in response to the orders issued by the Bankruptcy Court, Pilot, through its counsel, produced preliminary information and an unconditional payment to Moore Freight of the amount Pilot unilaterally calculated as owed to Moore Freight for wrongfully withheld rebates.

9.     In order to determine whether Pilot's calculations were correct, I requested from Pilot's attorney that Pilot provide the supporting data for the calculations of the withheld rebates.   That supporting data was provided on August 9, 2013. This supplemental information, according to Pilot's attorney, included all store-by-store and card account transactions information from November 2007 through July 23, 2013. After this information was provided, the previously noticed 2004 exams were continued indefinitely, and, to-date, no representative of Pilot has provided any testimony pursuant to those notices.

10.     Since August 9, Moore Freight has been in the process of internally (or through its retained financial advisor) reviewing the transactions detailed in the information provided by Pilot, and comparing that information to records of Moore Freight's fuel purchases in order to evaluate whether Pilot properly calculated the amount of withheld rebates. This process is time-consuming because it requires reviewing tens of thousands of transactions over an almost five year period.   Because of the volume of information and the work required to verify the information, Moore Freight has still not completed the process of reviewing and analyzing the information provided by Pilot.

11.     Despite having dealt directly with Pilot's in-house and outside counsel in the Moore Freight Bankruptcy Case, including specifically about withheld rebates, neither I nor anyone at H3GM or Moore Freight received the notice of the proposed class action settlement.

12.     Since receipt of the accounting information from Pilot in August, Moore Freight, its outside financial advisor, and H3GM have been consumed with work to

4

confirm a plan of reorganization for Moore Freight. On July 24, 2013, Moore Freight filed its plan of reorganization and accompanying disclosure statement. Because Moore Freight leases and finances the tractors, trailers and other equipment used in the operation of its business from more than thirty different entities and because of its large tax debt, the disclosure statement and proposed plan of reorganization are very complex. More than half of Moore Freight's creditors objected to the disclosure statement and have also indicated that they will oppose approval of Moore Freights' plan of reorganization unless modifications are made. Since the beginning of September, I, and other attorneys at H3GM, have been in constant negotiations with these creditors of Moore Freight regarding the scope of information included in the disclosure statement and treatment of various creditors' claims under Moore Freight's plan of reorganization because the confirmation hearing was scheduled for October 29, 2013.

13.     Negotiations with creditors regarding chapter 11 plan treatment is a protracted and complex process. Every proposed change to a creditor's plan treatment requires extensive analysis of operational projections, and potential implications for plan confirmation. Negotiation of Moore Freight's chapter 11 plan is even more complicated because of the number of creditors with potentially competing interests and the company's debt structure. The Moore Freight chapter 11 case is among the most complex chapter 11 cases with which I have been involved in the more than fifteen years that I have been representing debtors in large chapter 11 cases.

14.     Pilot did not file a motion for relief from the automatic stay or informally request relief from the automatic stay in the Moore Freight Bankruptcy Case. Based on

my experience, and in my opinion, the claims that Moore Freight has against Pilot are property of the bankruptcy estate.

15.     On October 22, 2013, I was reading a local newspaper article about the Pilot settlement, and realized that the deadline for opting-out of the settlement had already expired.

16.     I declare under penalty of perjury of the laws under the United States and the State of Arkansas that the foregoing is true and correct.

Executed on October 29, 2013.


_____
Barbara D. Holmes


Sworn to before me and
subscribed in my presence
this 29th day of October, 2013.

_____
NOTARY PUBLIC
My Commission Expires:  8 / 17 / 2015

6



FLAT GLASS TRANSPORTATION SPECIALIST

"SERVICE, INTEGRITY, QUALITY"

October 25, 2013

**VIA EXPRESS MAIL**

Pilot Flying J Settlement Exclusions
PO Box 869066
Plano, TX  75086-9066

      Re:    REQUEST FOR EXCLUSION FROM
             *National Trucking Financial Reclamation Service, LLC v. Pilot Corporation*
             Case No. 4:13-cv-00250-JMM

To Whom It May Concern:

      This is a request from Moore Freight Service, Inc. ("Moore Freight") to be excluded from the proposed settlement in the pending case of *National Trucking Financial Reclamation Services, LLC v. Pilot Corporation*, Case No. 4:13-cv-00250-JMM.  Moore Freight does business under the names of Moore Freight, Moore Freight Service, and Eastbridge Trailer. Moore Freight is headquartered at 2000 Eastbridge Parkway, Mascot, Tennessee, 37806.  The telephone number for Moore Freight is 865-932-2660.  The undersigned, Dan R. Moore, is the president of Moore Freight, and is therefore authorized to request this exclusion on behalf of Moore Freight.  Dan R. Moore may be reached at either 862-932-2660 x 162 or 865-465-0046.

      This request is made on this date because Moore Freight did not receive the settlement notice.  On October 22, 2013, Moore Freight learned of the deadline and is promptly making this request.

      This request is also made with reservation of all rights of Moore Freight as debtor in possession in a chapter 11 case in the U.S. Bankruptcy Court for the Middle District of Tennessee pending under Case Number 3:12-08921-KL3-11, including without limitation, pursuant to 11 U.S.C. § 362(a)(3).

      Sincerely,

      /s/

      Dan R. Moore
      President



EXHIBIT
B

EXPRESS
**MAIL**
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

Label 11-B, March 2004

EQ 943305256 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

**DELIVERY (POSTAL USE ONLY)**

**CUSTOMER USE ONLY**

**PAYMENT BY ACCOUNT**
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

**WAIVER OF SIGNATURE** *(Domestic Mail Only)*
Additional merchandise insurance is void if
customer requests waiver of signature.
I wish delivery to be made without obtaining signature
of addressee or addressee's agent (if delivery employee
judges that article can be left in secure location) and I
authorize that delivery employee's signature constitutes
valid proof of delivery.

**NO DELIVERY**
☐ Weekend  ☐ Holiday     Mailer Signature

**FROM:** (PLEASE PRINT)    PHONE (   )

**TO:** (PLEASE PRINT)    PHONE (   )

Pilot Flying J Settlement Exclusions
PO Box 869066
Plano, TX  75086-9066



FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811



EXHIBIT
C