```
 1                 IN THE UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF ARKANSAS
 2                         WESTERN DIVISION

 3   NATIONAL TRUCKING FINANCIAL
     RECLAMATION SERVICES, LLC, ET AL.
 4
                      Plaintiffs,
 5

 6      v.                               No. 4:13CV00250 JMM

 7                                       November 25, 2013
                                         Little Rock, Arkansas
 8                                       9:15 a.m.
     PILOT CORPORATION, ET AL.
 9
                      Defendants.
10

11

12                TRANSCRIPT OF FAIRNESS HEARING
              BEFORE THE HONORABLE JAMES M. MOODY,
13                 UNITED STATES DISTRICT JUDGE
                  _____
14
     APPEARANCES:
15
     On Behalf of the Plaintiffs:
16
         DON BARRETT, Attorney at Law
17          Barrett Law Group, P.A.
            404 Court Square North
18          Lexington, Mississippi  39095-0927

19       MICHAEL L. ROBERTS, Attorney at Law
         STEPHANIE SMITH, Attorney at Law
20          Roberts Law Firm, P.A.
            Post Office Box 241790
21          Little Rock, Arkansas  72223-1790

22       THOMAS P. THRASH, Attorney at Law
            Thrash Law Firm
23          1101 Garland Street
            Little Rock, Arkansas  72201
24

25                                            [Continued]
```

```
 1   APPEARANCES CONTINUED:

 2   On Behalf of the Defendants:

 3       AUBREY B. HARWELL, JR., Attorney at Law
         GEORGE H. CATE, III, Attorney at Law
 4       RONALD G. HARRIS, Attorney at Law
           Neal & Harwell
 5         One Nashville Place
           150 Fourth Avenue North, Suite 2000
 6         Nashville, Tennessee  37219-2498

 7

 8

 9

10

11

12

13

14

15

16

17

18

19
           Proceedings reported by machine stenography and displayed
20   in realtime; transcript prepared utilizing computer-aided
     transcription.
21

22

23

24

25
```

P R O C E E D I N G S

(Proceedings commencing in open court at 9:15 a.m.)

THE COURT: This is the case of National Trucking Financial Reclamation Services, LLC, et al. versus Pilot Corporation. It's Case Number 4:13CV250. I guess by way of background, the plaintiff filed an initial complaint back on April 24th of 2013, and that was followed by a consolidated amended class action complaint filed on July 16th of 2013. And then the parties, the plaintiffs and the defendants, entered into a settlement agreement. And on July 24th, 2013, I entered an amended class settlement preliminary approval order.

So we set this hearing today for a final fairness hearing to determine whether the settlement should receive final approval. And I've received a number of pleadings recently, one being a joint motion for final approval of the class action. That was accompanied by a number of affidavits in support. And I've read all those affidavits and I suppose I should make them a part of the record here today. Is that right?

MR. BARRETT: Yes, Your Honor.

THE COURT: We'll do that. I've also got a motion for approval of attorneys' fees, costs and expenses, and incentive awards, and there was also a supplemental memorandum filed over the weekend or Friday, I guess, and I've reviewed that, along with the joint report of compliance with the

1  preliminary approval order. So I've tried to read all of the
2  papers that were filed in the case, preliminary to this
3  hearing, but I'll be glad to hear from the parties. I think we
4  have Mr. Dix on the telephone, but everyone else is represented
5  here by counsel. So Mr. Thrash or Mr. Roberts, do you want
6  to --
7           MR. ROBERTS: Your Honor, may it please the Court?
8           THE COURT: Yes, Mr. Roberts.
9           MR. ROBERTS: Permission to approach the lectern?
10          THE COURT: Yes.
11          MR. ROBERTS: Good morning, Your Honor.
12          THE COURT: Good morning.
13          MR. ROBERTS: Your Honor, for the benefit of the
14  court reporter, my name is Mike Roberts. I am co-lead counsel
15  for the plaintiffs' class in this case. And today, Your Honor,
16  we come before you on our motion for final approval of this
17  settlement pursuant to Rule 23 of the Federal Rules of Civil
18  Procedure. All the parties in this case, Your Honor, are in
19  agreement to this settlement, and today we have two presenters
20  from the plaintiffs' team, myself and then Don Barrett, my
21  co-lead counsel.
22          THE COURT: All right.
23          MR. ROBERTS: I'll give a brief overview of the case
24  touching upon the initial filing of the complaint, the
25  consolidated complaint, and then I'll give a brief overview of

1  the settlement negotiations and bring us forward to today.
2  Then I'll pass the baton to the co-lead counsel, Don Barrett.
3  　　　　　THE COURT: Okay.
4  　　　　　MR. ROBERTS: Your Honor, we do submit this motion
5  for your approval today as well as our motion for attorneys'
6  fees, costs and expenses. Today, Your Honor, it's significant,
7  and we can't stress this enough, out of over 5500 class
8  members, there are zero objections that have been filed. And
9  there's a trace of opt-outs. My co-lead counsel will go into
10 more depth in those facts, but taking you back to
11 April 24th, 2013, when we filed this complaint, we filed it on
12 behalf of trucking companies. And, Your Honor, our complaint,
13 as you know, it's comprised of various theories of causes of
14 action. We have fraud, common law fraud, we have unjust
15 enrichment, conversion, RICO, the state deceptive trade
16 practices violations, as well as breach of contract and
17 fraudulent concealment.
18 　　　I'll spare you all the details of the complaint, because
19 as we know, you've already read all of those, but the parties
20 began settlement negotiations soon thereafter, late April,
21 early May. And we, at arm's length, began settlement
22 negotiations. And virtually every day, we would have
23 settlement talks between our side and the defense counsel.
24 That went on for several weeks. I believe it was July 14th of
25 this year when we reached a settlement finally. And as you

1  just noted on the record, Your Honor, that settlement was
2  preliminarily approved by you and you found that this
3  settlement seemed to be fair, reasonable, and adequate.
4       Fast forwarding up to last Friday, we did file some
5  supplemental papers because when we filed our initial motion
6  for final approval of the settlement, all of the numbers had
7  not yet come in so we estimated the settlement value of this
8  settlement for the class members to be, at that time, November
9  4th of this year, to be around 72 million.  That's been updated
10 and the new number is around 84.9 million, a little more than
11 that, but conservatively speaking, 84.9 million.  So Your
12 Honor, again, I have to stress there are no objections to the
13 settlement.  And in the courtroom today we have co-lead
14 counsel, Don Barrett, Tom Thrash, and myself as well as
15 Stephanie Smith from my law firm.
16      We also have Aubrey Harwell from the defense counsel.
17 He's the lead defense lawyer on this case, and his two partners
18 George Cate and Ron Harris.  But this settlement, Your Honor,
19 is about justice.  A lot of times when we hear about class
20 action settlements and we read about those settlements, you
21 hear about individual consumers receiving some benefit, whether
22 it's a 2-dollar coupon or $3 off of a show ticket.  But this
23 settlement, Your Honor, is real cash money that is important to
24 these corporate victims, these trucking companies, who have --
25 some are struggling, some of them have already gone out of

1  business, but some are still struggling in this great recession
2  that we find ourselves in.
3    And I've represented trucking companies for over 20
4  years. When I first started practicing law, one of my first
5  clients was a trucking company, and I've represented them and
6  protected them ever since. So it's important for these
7  trucking companies to have justice and to have their moneys
8  coming in the door as soon as possible. So I respectfully
9  submit that if you find this settlement to be fair, reasonable,
10 and adequate, that this court enter an order as soon as
11 possible so that these trucking companies can receive their
12 money that they're due.
13    THE COURT: All right.
14    MR. ROBERTS: I'll pass the baton.
15    THE COURT: Thank you. Mr. Barrett.
16    MR. BARRETT: May I approach, Your Honor?
17    THE COURT: Yes.
18    MR. BARRETT: Your Honor, I'm Don Barrett from
19 Lexington, Mississippi on behalf of the plaintiff class.
20    THE COURT: Mr. Barrett.
21    MR. BARRETT: The class and the defendants and all
22 the lawyers thank you for continuing to hold this hearing in
23 spite of the inclement weather, the sleet and so forth, the
24 coming ice storm. This hearing is very important to the
25 thousands of business owners that we represent as well as to

1  the defendants.  Nevertheless, Your Honor, if the Court would
2  indulge me, I would like to begin on a personal note here.  To
3  most people in Little Rock today or maybe to everybody except
4  me, it is inclement weather, sleet, snow, cold, gray.  To me,
5  today the sun is shining, the breezes are light and warm and
6  the flowers are blooming.  Because until yesterday, my son
7  Charles and his wife Elizabeth in Nashville, Tennessee had
8  three wonderful children, all beautiful and smart little girls.
9  And yesterday morning they gave birth to a fourth child, a
10 healthy baby boy.
11              THE COURT:  Congratulations.
12              MR. BARRETT:  And not only that, they named him John
13 William Barrett, II.  That's my name.  After me.  After me.  I
14 thank the Court for this opportunity to make a permanent record
15 of the profound joy of the Barrett family and my personal
16 profound gratitude.
17      Your Honor, we request final approval of the settlement
18 agreement.  The Court has before it, and you've mentioned this,
19 I'd like to be a little more specific about it for the record
20 as to what the Court has had before it and has considered.  Of
21 course, the joint motion for final approval, that's document
22 27; the memo that the class plaintiffs filed, document 28; and
23 then these affidavits, the affidavit of Paul Pardue, the senior
24 manager of the internal audit program at Pilot, document 28-1;
25 the affidavit of Lauran Schultz, the executive director of

1  Hilsoft Notifications, document 28-2; the affidavit of Timothy
2  J. Taylor, the president of Total Class Solutions, who is the
3  appointed class administrator in this case; the affidavit of
4  Robert Alexander, who is the director of fraud, forensic and
5  litigation services for Horne, LLP.  That's the Court-appointed
6  independent accounting firm, document 28-4.
7      Then the collective affidavits of all of the class
8  counsel, document 28-5.  There were a couple of declarations
9  filed by class members who originally had opposed the
10 settlement and then when they came to understand it, they on
11 their own, we didn't ask them to do it, they filed affidavits
12 and declarations in support of it, one from Ohio Auto Delivery,
13 document 28-6, and a submission in support of settlement filed
14 by Eagle Motor Freight, document 28-7.  And then we have, of
15 course, the defendant's memo, document 34, and our petition for
16 approval of the fees and expenses, document 29, and then our
17 final supplemental memo that we filed just on the 22nd of
18 November, document 43.
19     We appreciate the Court reading those affidavits and
20 considering the affidavits as part of the record.  Let me
21 explain to the Court what's happened since we last met.  After
22 Your Honor approved the amended settlement agreement back in
23 July and the notice plan, the Court administrator mailed the
24 notices as required.  The Taylor affidavit gives the details of
25 that and how it was successfully accomplished.  Lauran Schultz

1  and his Hilsoft Notifications, they're one of the very top blue
2  chip notice providers for class action settlements in the
3  country.  His affidavit establishes that the notice approved by
4  the Court and the effort to -- the notice program, the
5  dissemination, was the best notice practicable under the
6  circumstances and it satisfied due process including the desire
7  to actually inform requirement.
8       While that notice was being disseminated, the terms of
9  the settlement were being implemented, fully and vigorously and
10 professionally.  What Pilot was required to do, it has done
11 well, and if I may add, Your Honor, it has been done honorably.
12 The affidavit of Paul Pardue gives the details of the auditing
13 activities.  It was a massive undertaking accomplished through
14 the efforts of 25 internal auditors and more than 30 contract
15 auditors and it was overseen by the independent auditing firm
16 appointed by Your Honor, Horne, LLP.  The affidavit of Horne's
17 head forensic CPA, Robert Alexander, explains the thorough,
18 thorough job of oversight which the Court's auditor had done.
19 And Horne, in all of its work, has found not one single
20 problem, not one exception, as the auditors call it.
21      The principal terms of the settlement are these:  The
22 defendant shall pay 100 percent of the amount owed to each
23 class member, plus interest, figured at 6 percent.  But this is
24 a point I want to make.  The interest runs from the date of
25 each underpayment.  This has gone on for a number of years

1  allegedly.  I'll discuss the effect of that in a moment if I
2  could.  The amounts owed are determined by this internal audit
3  verified by an independent audit, with the right of any class
4  member to have his account reviewed again by his own auditor if
5  he wishes.  The amounts paid to the class members are net.
6  That is, nothing is deducted.
7      The defendants are separately responsible for all costs
8  and expenses.  The defendants pay all costs of the notice, the
9  notice provider, and the class administrator, all attorneys'
10 fees and expenses which the Court may award, and the
11 10,000-dollar incentive awards if approved by the Court.  As
12 set out in our supplemental filing of November 22nd, the class
13 settlement has total value and benefits, as Mike said, of right
14 at $85 million if the Court approves the fee and expense
15 report.
16     It's broken down like this:  $56.5 million in principal
17 amount of underpayments which are being paid to the class.  The
18 interest will be approximately $9.75 million.  That's not
19 6 percent.  In other words, the class is not getting
20 106 percent of their money back.  As it figures, they're
21 getting 117.2 percent of their money back.  Because the
22 interest runs, that 6 percent is a per annum from the date of
23 the loss if you will.
24         THE COURT:  Compounded you mean?
25         MR. BARRETT:  It's not compounded, but it runs

1  straight -- in other words, if it's two years from the day of
2  underpayment, they would get it for --
3              THE COURT:  Each year.
4              MR. BARRETT:  Each year.  The audit costs to them
5  have been -- which they're paying -- like 4 and a half million
6  dollars.  We've requested attorneys' fees of $14 million if the
7  Court approves it, and I'll discuss that in a minute, and then
8  attorneys' expenses of 52,000, the incentive awards of 10,000
9  to the class reps, the fees paid for the notification services
10 of $22,000, and the class administrator fees of $31,000 and
11 change.
12             THE COURT:  The incentive would be 10,000 times ten,
13 would it not?
14             MR. BARRETT:  Yes, sir, that's correct, for each
15 one.  Your Honor, the fact that this is a great settlement and
16 one worthy of Your Honor's final approval, I think it's best
17 demonstrated by the reaction of the class members themselves.
18 And Mike was making a point that I'd like to emphasize.  It's
19 about 5800 and some odd class members.  Not a single objection
20 was filed.  And they got actual notice.  This is a big deal to
21 them.  In spite of -- Your Honor may have looked at the
22 internet or read the press, there have been a few lawyers out
23 trolling for cases and saying you need to hire us to sue these
24 people -- the opt-out rate was miniscule.
25         It was a 1 percent opt-out rate.  Only about 59 or 60

1   people opted out.  And this is not a consumer class which
2   involves relatively small amounts of money and, therefore, the
3   class members are going to be disinterested.  You know, if they
4   get it, fine, if they don't, fine, they're not going to bother
5   to opt out, wouldn't waste a stamp on it.  This is not that.
6   This class is composed of sophisticated trucking companies with
7   their own financial officers, many of them have their own
8   lawyers.  And this was an important business decision that had
9   to be made by them and their vote was 99 percent in favor of
10  the settlement.  That's really a pretty astonishing fact.
11         I said, Your Honor, back last July that this was -- I was
12  proud of the settlement and I was bragging on it, and virtually
13  the unanimous approval now of these businesses validates that
14  in my opinion.  We respectfully ask that the settlement be
15  approved.  Your Honor, we also ask that you approve our
16  attorneys' fee request and the incentive awards.  After the
17  case was settled, Mr. Harwell and I agreed, subject to the
18  Court's approval, that this court would pay a fee which would
19  be the lower of a third of whatever principal amount that
20  turned out to be, or $14 million, whichever is less.  The
21  principal amount turned out to be 56 and a half million
22  dollars.
23         That would have been an 18 and a half million dollar fee,
24  but we are limited by the cap to what we can ask for, so we
25  respectfully ask the Court to award that $14 million.  Our

1  requested fee is 16.4, something slightly over 16.4 percent of
2  the total benefits to the class.  We've worked hard over the
3  last seven months to bring this settlement to fruition.  Our
4  oversight duties continue, and this sounds like bragging, but I
5  think it's a fact, that we've achieved a pretty spectacular
6  result for these 5800 businesses which comprise our class.
7       Each one of them is going to get -- well, an average of
8  117.2 percent of its actual damages as verified by a double
9  audit which cost the businesses nothing.  They have zero legal
10 expenses; they paid zero costs.  The fee we're asking for is
11 well under the range of fees that Your Honor knows that's
12 routinely asked for and approved here in this circuit.  Not a
13 single one of the 5800 class members, all businessmen, not a
14 single one of them -- it's funny for me the thought that I'd be
15 representing 5800 tort reformers, but I do.  And not a one of
16 them, you know, even said, well, this fee is too high, not a
17 one of them.  And we think the reason is because it's so
18 obvious that this is a reasonable fee, and we ask the Court to
19 approve it.
20      That's really all I have to say.  If the Court has any
21 questions, I'll be happy to answer them.
22           THE COURT:  No, I don't have any questions.  Thank
23 you, sir.
24      Mr. Harwell.
25           MR. HARWELL:  Thank you, sir.  Good morning, Judge.

1  THE COURT: Good morning, Mr. Harwell.
2  MR. HARWELL: I want to begin by a personal comment
3  and that is the Court's commitment regardless what the weather
4  was going to be this morning to try to hold this hearing so
5  that those of us who came from far wouldn't have to come back.
6  It's very much appreciated. As is true, Your Honor, of all the
7  courtesies you've extended us since the beginning, so we thank
8  you, sir. I have with me, Your Honor, Ron Harris, who's a long
9  time member of this bar and you'll remember he moved by
10 admission, and then my partner, George Cate.
11 THE COURT: Yes. Welcome.
12 MR. HARWELL: They have done the lion's share of the
13 work. On the 15th of April, federal agents served a search
14 warrant on the headquarters in Knoxville, Tennessee of Pilot
15 Flying J. There is a federal criminal investigation that is
16 ongoing by virtue of these issues. But on April 16, the CEO of
17 Pilot Flying J. issued an edict that he wanted his auditors to
18 come in off the road. He and his management team began to do
19 what was necessary and responsible to determine what had
20 happened and whether customers were treated fairly or not. He
21 also directed that as the audits were done and there were
22 issues learned in regard to the failure to pay over a period of
23 years, that those customers were to be paid and be paid
24 promptly.
25 One of the fascinating things about that, Your Honor, is

1  we didn't ask for releases on that.  We did it because
2  Mr. Haslam directed that we do the right thing.  Seven months
3  later, thanks of this court and to excellent lawyers, this
4  class action litigation is before you today seeking final
5  approval.  I must tell you, Judge, that Don Barrett, Mike
6  Roberts, and Tom Thrash are due tremendous credit.  They have
7  been absolutely dedicated advocates, but they have been decent,
8  honorable men, and they've operated at the highest level of
9  professionalism, and if it were not for that, this litigation
10 would have gone on for years and years and years.  So I want to
11 express my gratitude to them.
12         The truth is, Judge Moody, this case is a shining example
13 of how the system should work and how it has worked.  And
14 that's a credit to the Court, the lawyers, and also to the
15 parties.  You know, Judge, I spoke last time at the preliminary
16 fairness hearing about professionalism and how our profession
17 is no longer revered as it was when I was a young lawyer.  If,
18 in fact, people did across the country what's been done here,
19 then we wouldn't have the lack of respect that is being visited
20 upon us now.  So I wanted to make that comment, Your Honor.  I
21 know you've got a tremendous commitment to professionalism.
22         Judge, credit's got to also go to our CEO, Jimmy Haslam.
23 He directed that we do this right, he directed that we pay all
24 the money that was owed, and he directed if there was any
25 benefit of the doubt in regard to the audit, the benefit of the

1  doubt was to be given to the customer's benefit.
2          This settlement, as Mr. Barrett shared with you, has been
3  looked at under a microscope.  And when you consider the fact
4  that there are 5500 members of the class and you only had 146
5  opt-outs, it clearly demonstrates the fundamental fairness of
6  what's happened.  It also means, Your Honor, that if you look
7  at it and you reduce those opt-outs to those that are
8  legitimate, for example, three of them opted out because they
9  didn't want to be a party to this because they weren't owed any
10 money.  We count about 60 that are realistic opt-outs.  That is
11 less than 1 percent, Judge, of the whole class.
12         That's, to me, a huge tribute to what's been done here by
13 these people and done right.  Judge Moody, this litigation
14 settlement awards the risk.  In the absence of settlement,
15 there would be lawsuits throughout the country, they would be
16 issuing certification of classes, this thing would be dragging
17 on.  That is not what we're here today to do.  We're here today
18 to get Your Honor to approve a resolution for all of this.  I
19 want to make one comment consistent with Mr. Barrett.  I am
20 amazed, Judge, having tried a lot of cases around the country
21 and having been involved in a lot of class actions, there is no
22 objection that was filed, not timely filed or not late filed.
23         Judge Moody, I've never seen a case where there was no
24 objection.  It speaks to the fairness and the perception of
25 fairness that's been created by these settlement terms.  And so

1  what I would like to do, may the Court please, is join the
2  plaintiffs and respectfully move that this matter be resolved
3  by final order.  There's one other thing, Your Honor, when I
4  was a young lawyer, I never heard of a 14 million-dollar legal
5  fee.  I don't think anybody in Nashville, Tennessee ever saw a
6  14 million-dollar legal fee.  The fee was negotiated after all
7  the settlement terms were negotiated so that wouldn't cloud the
8  parties' issues and views.  But I must tell you, I promised
9  Mr. Barrett and Mr. Thrash and Mr. Roberts I would stand before
10 this court on the record and I would say that it's fair and
11 it's reasonable under the circumstances, and they're entitled
12 to it, Judge.
13       Having said that, Your Honor, I want to thank you again.
14          THE COURT:  Thank you.  Anybody else want to speak
15 before I make a final ruling here?
16          MR. ROBERTS:  No, Your Honor, thank you.
17          THE COURT:  All right.  Well, I don't have any
18 reservations about giving final approval here of this
19 settlement because I do think it is fair, reasonable, and
20 adequate as required by the Federal Rules and also by the act,
21 the Class Action Fairness Act.  And so I'm going to approve the
22 settlement and I'm also going to approve the petition for
23 attorneys' fees and costs.  I don't think anybody questions my
24 jurisdiction in the case.  Everyone agrees that I do have
25 jurisdiction.  And I've already given temporary or I've given a

conditional class certification back in July and I'm satisfied by everything that has occurred since that time that all of the appropriate steps were taken.

As I've said, I reviewed all the affidavits. I have been impressed with the quality of the counsel here on both sides and also by the team that did the audit, the team that did the notice, and all of the oversight that has been done to ensure that all of the class members are being treated fairly and are compensated in a reasonable and adequate way. So I do want to commend everyone that's participated in this, all the lawyers and all of the people that have provided support to the settlement because as all of you have pointed out, I think this is an exceptional effort by both sides and has enured to the benefit of everyone in this class. So I'm pleased with the way it was handled. I'm satisfied and I'm confident that all of the class members are being treated fairly.

I know the plaintiffs had a strong case, but I'm also aware that there were defenses here, so on balance, I think it was fairly resolved. The defendant is able to pay. The litigation could have easily been complex and delayed. And I'm impressed, as everyone is, by the lack of any opposition to the settlement. So I'm going to approve the settlement, I'm going to approve the attorneys' fees in the amount of $14 million with all of the expenses that were incurred, and also the incentive of $100,000 at the rate of $10,000 to each of the ten

1 lead plaintiffs in the case, and also to compensate those that
2 provided services in the way of notice and audit and oversight
3 here.
4      So I have a proposed order which I've reviewed and I'm
5 not going to make any substantial amendments to that, if any,
6 so I'll be entering that fairly promptly.
7           MR. HARWELL:  Thank you, Your Honor.
8           MR. BARRETT:  Your Honor, I took the liberty of
9 maybe like a little kid writing a letter to Santa Claus, but I
10 did -- we went through -- you have one with blanks in it, we
11 have one that's filled out if I could present it to the Court.
12           THE COURT:  Sure, I'll look at it.  Thank you, Mr.
13 Barrett.  If there's nothing else, then we'll be adjourned.
14      (Proceedings adjourned at 9:46 a.m.)
15                     C E R T I F I C A T E
16   I, Karen Baker, Official Court Reporter, do hereby certify
17 that the foregoing is a true and correct transcript of
18 proceedings in the above-entitled case.
19
20 /s/ Karen Baker, RMR, CRR, CCR
   --------------------------------          Date: November 26, 2013
21 United States Court Reporter
22
23
24
25

Karen Baker, RMR, CRR, CCR
United States Court Reporter